```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

MANDY SHIVERS,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )    Case No. CIV-17-328-RAW-KEW
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )
```

**REPORT AND RECOMMENDATION**

Plaintiff Mandy Shivers (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 44 years old at the time of the ALJ's decision. Claimant obtained her GED.  Claimant has worked in the past as a housekeeper, construction worker, phone sales person, sanitation worker, and waitress.  The ALJ determined Claimant had no past relevant work.  Claimant alleges an inability to work beginning July 22, 2011 due to limitations resulting from COPD/asthma, PTSD, anxiety, neck problems, multiple personality disorder, obesity,

marijuana dependence, major depressive disorder, and possible throat cancer.

## Procedural History

On March 4, 2015, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 15, 2016, Administrative Law Judge ("ALJ") Susan Conyers conducted an administrative hearing by video with Claimant appearing in Ardmore, Oklahoma and the ALJ presiding from Oklahoma City, Oklahoma. On September 19, 2016, the ALJ issued an unfavorable decision. On July 6, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform light work, with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

properly evaluate the medical opinion evidence and associated medical source statements; (2) failing to consider the effect of Claimant's prescribed use of a cane upon her RFC; and (3) failing to consider the effect of her incontinence upon her RFC.

## Medical Opinion Evidence

In her decision, the ALJ determined Claimant suffered from the severe impairments of disorders of the neck, COPD/asthma, major depressive disorder, post-traumatic stress disorder ("PTSD"), obesity, and marijuana dependence, unspecified. (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, the ALJ found that Claimant could not climb ladders, ropes, and scaffolds; no reaching overhead with the bilateral upper extremities; avoid even a moderate exposure to pulmonary irritants, such as dust, fumes, gases, and poor ventilation; and could perform simple and routine tasks consistent with unskilled work involving no interaction with the general public and occasional contact with co-workers. (Tr. 23).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of textile sewing machine - auto feed, small parts assembly, price marker, grinding/hand polisher, crushing and grinding, and addresser, all of which were found to exist in sufficient numbers in the national

and regional economies. (Tr. 28). As a result, the ALJ found Claimant was not under a disability since March 4, 2015, the date the application was filed. Id.

Claimant contends the ALJ failed to properly consider the opinion evidence. On April 6, 2016, Dr. Johana Junel prepared a mental medical source statement on Claimant. She found Claimant was extremely[2] limited in the areas of carrying out short, simple instructions; understanding and remembering detailed instructions; carrying out detailed instructions; the ability to make judgments on simple work-related decisions; interacting appropriately with supervisors; interacting appropriately with co-workers; responding appropriately to work pressures in a usual work setting; and responding appropriately to changes in a routine work setting. She also determined Claimant was markedly[3] limited in understanding and remembering short, simple instructions and interacting appropriately with the public. The ALJ also found Claimant would experience "good days" and "bad days" and would miss 30%-50% days if working part time which would "drastically increase" if Claimant were working full time. Dr. Junel's diagnosis was Post Traumatic Stress Disorder

---

[2] "Extreme" limitation is defined on the form used by Dr. Junel as "[t]here is a major limitation in this area. There is no useful ability to function in this area."

[3] "Marked" limitation is defined on the form as "[t]here is serious limitation in this area. The ability to function is severely limited, but not precluded."

and Major Depressive Disorder, severe, without psychotic features. (Tr. 600-01).

In her narrative statements, Dr. Junel states

> Mancy has shown an inability to handle changes at this facility. Her paranoia and stress increase when having to be around others in the bldg. She has walked out several times when told she needed to wait. The consumer's anxiety escalates when trying to interact with others.

(Tr. 601).

Claimant's abilities in keeping a regular schedule/routine are compromised because "[t]he consumer's mental health affects her ability to follow a set routine. She cannot sleep for days at a time then will sleep for overly long periods of time." Id. Dr. Junel estimated that Claimant is likely to be "off task" for 25% or more of a typical workday. (Tr. 602).

The ALJ accurately recited Dr. Junel's findings in her decision. (Tr. 18-19). She then concluded, however, that the opinion should be "given some weight; however, the limitations set out in this opinion is not supported by other objective evidence in the record." (Tr. 27).

As an initial matter, Dr. Junel's report provides this Court with a curious problem. The signature on the report is somewhat illegible, with the only assured conclusion being that the person signing the report had the first initials of their first and last

7

names of "J." Unknown to this Court is how the ALJ and the party responsible for compiling the index to the administrative record knew that the author was Dr. Johana Junel since neither Claimant nor any other discernible source identified Dr. Junel as a physician that rendered either treatment or consultative services. Even more curious is the fact that the only psychiatrist appearing in the record who rendered treatment to Claimant around the same time as the source statement was completed was Dr. JaHannah Jamelarin with Mental Health of Southern Oklahoma. (Tr. 719, 722, 724). The source statement expressly references Claimant's treatment "at this facility" and that "she has walked out several times when told she needed to wait." (Tr. 601). These statements would indicate the psychiatrist completing the source statement rendered treatment to Claimant. While a "Dr. Junel" does not appear in the treatment records, Dr. Jamelarin is referenced repeatedly. The significance of this determination is that the Commissioner challenges the fact that Dr. Junel was a treating physician to Claimant. This Court is left with no definitive answer to this question.

Whether the author of the statement is a treating physician or a consultant, the ALJ gave the opinion "some weight" but concluded that "the limitations set out in the opinion is not supported by other objective evidence in the record." (Tr. 27). For her part, Claimant recites the recitation of Dr. Junel's opinion contained in the ALJ's decision, underlining portions she contends were rejected

8

by the ALJ. As the Commissioner points out in the briefing, this Court is uncertain how Claimant knows that only these portions were rejected by the ALJ since that specific finding is not made in the decision. This, however, also points out the flaw in the ALJ's analysis. She gave the opinion some weight which begs the question of which portions were given weight and which were not. The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). Moreover, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). On remand, the ALJ shall ascertain the source of the opinion attributed to "Dr. Junel", re-evaluate the opinion, and specifically set forth the portions of the report which are given weight, the portions that are not supported, and the evidence which contradicts that opinion.

Claimant also asserts that the ALJ failed to set forth the weight attributed to the opinion of Dr. Matthew Feist, a consultative physician. The ALJ cited Dr. Feist's findings at length in the decision. (Tr. 15). Dr. Feist examined Claimant on

June 13, 2015. He concluded

> [Claimant] does have objective physical findings, which support her claims of back and hip pain. These findings would make it difficult for her to perform tasks that involve walking or lifting even small weights. She has shortness of breath, which would interfere with any job that requires physical exertion. There is not physical evidence to support or disprove her claim of headaches. The claimant had shoulder weakness, which would make it difficult for her to lift anything above her head or to do any work requiring lifting weights with her arms.

(Tr. 530).

He also noted in his findings that Claimant experienced pain in all motions with her neck. She had an unsteady and unstable gait. Id. The ALJ is required to consider and weigh all medical opinions as the authority cited above reaffirms. On remand, the ALJ shall expressly consider the weight she afforded Dr. Feist's opinion and set forth the basis and evidence relied upon to do so.

### RFC Findings

Claimant contends the ALJ's RFC is not supported since she did not consider the effect of Dr. Feist's opinion upon the RFC. On remand, the ALJ shall reassess her findings in the RFC after re-evaluating the opinions of Dr. Feist and Dr. Junel.

### Consideration of Cane Use and Incontinence

While recognizing Claimant's prescription for a cane and her incontinence, the ALJ failed to include any restrictions for these

10

conditions in the RFC or explain why they were excluded from the RFC.  On remand, the ALJ shall address the limitations imposed by these conditions and the basis for either including them in the RFC or for excluding them.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case **REMANDED** for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE